**Gerald Lee EDWARDS, Petitioner,**

**v.**

**N. L. HALE, Warden, Respondent.**

**Civ. A. No. 5229-68.**

United States District Court
S. D. Alabama, S. D.

June 27, 1969.

Horace Moon, Mobile, Ala., for petitioner.

MacDonald Gallion, Atty. Gen., State of Alabama, Montgomery, Ala., for respondent.

### ORDER

PITTMAN, District Judge.

Gerald Lee Edwards filed a petition of habeas corpus with this court and requested to proceed *in forma pauperis*. An order to show cause was entered, a return and answer was filed by the respondent, and the petitioner was given leave to proceed in forma pauperis and an attorney, the Honorable Horace Moon, Jr., was appointed to represent the petitioner on February 25, 1969. The answer filed by the respondent revealed that the petitioner's error coram nobis in the state court was dismissed without a hearing.

This petition was set for a hearing, notice was given to all attorneys, and a writ was issued directing that the petitioner be brought to Mobile for the hearing. The hearing was set for March 18, 1969. The order directed that the petitioner be brought to Mobile on or before March 8, 1969, in order that he would have an opportunity to consult with his attorney and prepare for the hearing.

On the 18th day of March, 1969, this cause came on for a hearing with petitioner, his attorney of record, and attorneys for the respondents present in open court. Opening statements were made, evidence taken, including the petitioner testifying, opportunity for arguments were made, and the case taken under advisement.

Counsel for petitioner seeks relief on four grounds: (1) Illegal interrogation of the petitioner before trial which consisted of physical mistreatment by police officers, failure to advise him of his right to remain silent, failure of advice to him that he had a right to have an attorney present; (2) His arrest without a warrant; (3) Incompetent counsel when his case was tried in the State Court on its merits, and (4) Failure to permit him or his counsel to cross-examine witnesses in the State Court when the case was tried.

(1) Re illegal interrogation. The petitioner testified of physical mistreatment and failure to advise him of his rights to an attorney and to remain silent by law enforcement officers.

With regard to alleged mistreatment by police officers or persons conducting the interrogation, the petitioner testified that at one time they pushed his head down onto his hand and caused him to bite into the back of his hand which he said left scars on his hands from the result of the bite by his teeth. The court examined the scars. It was clearly evident the scars formed a punctuation mark, a question mark. It was composed of two parts and very clearly made. It is such a mark as could be made by cutting or burning the skin. It is hardly conceivable that teeth marks could have formed as perfect a mark as appears on the back of his hand. In the court's high school experience several boys cut their initials, etc. on their arms or hands.

This case was tried prior to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The holding there does not apply. The factual situation and the Escobedo facts are different. No claim is made the petitioner requested an attorney or that he had one. There is no room for application of Escobedo.

■ (2) Re the arrest without a warrant. The record clearly shows a warrant was issued on the day of his arrest. The detective who arrested him impressed the court as alert, intelligent,

and trustworthy. One of the arresting officers had the warrant and the defendant was told of the nature of his arrest. The record is not clear as to whether the warrant was actually shown to him or that he read it. Albeit, an invalid arrest is not a sufficient ground for the relief that the petitioner here seeks. Kristiansand v. United States, 319 F.2d 416 (5 CA 1963).

(3) and (4) Incompetent counsel and examination of witnesses. The petitioner testified the attorney was employed by his brother. He claims the attorney did not go over the facts of the case nor hold any conferences with him prior to the State Court trial. He further testified that his counsel did not call two local witnesses, John E. Finkler and James Gambel, who would have testified they were present at the scene of the alleged crime, that the petitioner was not the person that committed the crime, and, although the witnesses testified, it was on call by the State and his counsel did not examine them. He further testified that his lawyer didn't show the proper interest in the case and thought it was because he did not collect his fee.

The petitioner was represented in the State Court by Joseph Matranga, a member of the Mobile Bar who received an A.B. degree from the University of Alabama, and in 1954 received an LL.B. from the University of Alabama. Mr. Matranga is now forty years of age. He was thirty-three in 1962 at the time of the trial. Upon graduation from Law School, Mr. Matranga entered the Marine Corps as an officer. He did field work and attended several schools connected with judicial procedures. He handled considerable legal work, including trial work, during his tour of duty.

Mr. Matranga left active duty in 1958 as a First Lieutenant. The same year he began his practice of law in Mobile. His firm consists of his brother and two others. Their practice has a substantial amount of criminal work.

Mr. Matranga testified that prior to 1962, at the time of the trial of this case, he handled probably not less than

50 criminal cases per year of which a considerable number were capital offenses. The undersigned has appointed Mr. Matranga as counsel for indigents in this court in criminal cases and particularly recalls one very difficult and trying case which Mr. Matranga served most competently.

██ He has enjoyed substantial financial success. The court takes judicial knowledge of his reputation as a good trial lawyer in this area.

He recently participated as retained counsel in a criminal case in the Northern District of Alabama wherein a former Attorney General and two other persons were accused of extortion. This case consumed five weeks or more in trial and was widely reported. Although the court's experience with Mr. Matranga has been since July 1966, his present success indicates a potential in 1962.

Mr. Matranga has moved his office four times since 1962. He does not have any notes and frankly admitted that his recollection of the facts of the case were "hazy".

The State Circuit Court records indicate that Mr. Matranga in May of 1962, filed a petition for a writ of habeas corpus there for the purpose of seeking to reduce the bond of the petitioner. A hearing was had on May 28, 1962. The bond was reduced and the petitioner was released.

On July 12, 1962, the petitioner was arraigned. Mr. Matranga appeared and filed pleas of Not Guilty and Not Guilty by Reason of Insanity. The case was set for trial and called on September 25, 1962, with Mr. Matranga present. The case was continued for one day to enable the State to seek to get a witness not present. On the following day, September 26, 1962, the case was tried.

The court records show the petitioner took the stand and testified. The court reporter's notes show Mr. Matranga *called* on behalf of the defendant the two witnesses the petitioner now claims Mr. Matranga would not put on the stand.

Portions of trial audiograph records have been played back. These show Mr. Matranga conducted the direct examination of Mr. Finkler and Mr. Gambel contrary to the petitioner's claims.

Mr. Matranga was unable to testify when or how many times or where he talked with the petitioner prior to trial. The habeas corpus petition and the pleas of Not Guilty and Not Guilty by Reason of Insanity indicate conferences with the petitioner prior to such petition and pleas being filed.

Mr. Matranga testified he does not have a recollection of ever having gone to trial without having gone over the facts of the case with a defendant, particularly where the offense was as serious as this one. He has a recollection that some negotiations for a settlement on a plea of guilty were had with the State's prosecuting official which he conveyed and discussed with the petitioner, and advised him of the limits of punishment.

The State prosecutor, although differing from Mr. Matranga on the details of the negotiation, verified Mr. Matranga's recollection that there was a discussion concerning a plea of guilty with less than the maximum punishment. He recalls the court became impatient with the delay of the trial due to Mr. Matranga discussing the possibility of a plea with his client.

The petitioner denies any such conference. He denies the limits of punishment were conveyed to him by his attorney.

The trial audiograph records, together with a list of witnesses prepared by the Court Reporter and endorsed on the coverings of the records, reveal that Mr. Brutkiewicz was the only State prosecuting official who made opening statement, examined witnesses, or made a closing argument; that the State called five witnesses. Mr. Matranga cross-examined all the State's witnesses except Mrs. June Rowell. Mrs. Rowell's testimony lasted about one minute. She testified she was owner of the business and

a young man by the name of Billy Rowell was running the business on the day of the robbery. She was not present at the time of the robbery. Mr. Matranga did not cross-examine her.

Mr. Matranga called three witnesses, John Finkler and James Gambel, and the defendant. Witnesses Finkler and Gambel were alibi witnesses. Mr. Brutkiewicz and Mr. Matranga made closing arguments and during the State's closing arguments Mr. Matranga interrupted his argument two times to make objections. (The defendant's name is not listed by the court reporter as taking the stand, but a playing of the audiograph record clearly reveals he testified.)

The hearing on Tuesday, March 18, 1969, was recessed for the purpose of securing petitioner's brother as a witness. On the 20th of March the hearing was reconvened. The brother, James Marion, who employed the attorney, Mr. Joseph Matranga, for the petitioner, testified that it was his recollection he paid all of Mr. Matranga's fee.

At this time, the petitioner desired and was granted leave to present to the court what he termed inconsistencies in evidence presented on March 18, primarily in connection with the testimony of Mr. Brutkiewicz, State Deputy District Attorney. Petitioner stated Mr. Brutkiewicz did *not prosecute* him, but, instead, Mr. Strickland. The audiograph record of the trial was played back and the voice of Mr. Brutkiewicz was unmistakable. The court reporter's longhand notes showed that Mr. Brutkiewicz participated in the trial of the case.

The following is a summary of the glaring inconsistencies of the petitioner's testimony refuted by the record and other credible testimony:

(1) The petitioner's claim of police brutality in scarring his hand is completely at variance with the existing scar.

(2) His counsel did not call witnesses Finkler and Gambel, nor examine them, is totally refuted by the court reporter's notes and trial audiograph records.

(3) His attorney did not show proper interest because he did not collect a fee rebutted by the petitioner's brother who stated he paid the full fee.

(4) That Mr. Brutkiewicz did not prosecute him was refuted by the court reporter's notes and trial audiograph records.

The court finds that the petitioner is not a credible witness.

 The court further finds that the four grounds heretofore set out on which the petitioner seeks relief are not supported by the evidence, but that the credible evidence is overwhelming to the contrary.

The petition is hereby denied.